Filed 11/5/14  In re Kenneth T. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re KENNETH T., a Person Coming Under the Juvenile Court Law. | |
| | D064724 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JCM231201) |
| v. | |
| KENNETH T., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon and Browder A. Willis III, Judge.  Affirmed in part and remanded with directions.

Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

The San Diego County District Attorney's Office filed a juvenile delinquency petition under section 602 of the Welfare and Institutions Code (undesignated statutory references will be to the Welfare and Institutions Code unless otherwise specified) alleging Kenneth T. committed three felony offenses: (1) robbery (counts 1: Pen. Code, § 211; victim: Stephanie D.); (2) receiving stolen property (count 2: Pen. Code, § 496, subd. (a)); and (3) grand theft (count 3: Pen. Code, § 487, subd. (c)).

Following a contested adjudication hearing, the court found true the allegation that Kenneth committed the offense of receiving stolen property, but did not declare on the record whether this offense was a misdemeanor or a felony. The court found not true the allegations that he committed robbery and grand theft.

Kenneth raises four contentions on appeal. First, he contends insufficient evidence supports the juvenile court's finding that he committed the offense of receiving stolen property.

Second, Kenneth contends—and the Attorney General agrees—the juvenile court erred in failing to explicitly declare on the record whether his offense of receiving stolen property was a felony or a misdemeanor, as required by section 702 and *In re Manzy W.* (1997) 14 Cal.4th 1199 (*Manzy W.*), and thus the case must be remanded for such an express declaration.

Third, Kenneth contends the two conditions of probation he now challenges for the first time—which require that he (1) obtain his probation officer's permission before he travels out of the county, and (2) be home every day between 6:00 p.m. and 6:00

a.m.—are "unconstitutionally overbroad and restrain his liberty under federal and state law."

Last, he contends that, if this court determines he waived his right to challenge the two foregoing conditions of his probation by failing to object to them in the juvenile court, his counsel's failure to object constituted prejudicial ineffective assistance of counsel.

For reasons we shall explain, we conclude that substantial evidence supports the juvenile court's finding that Kenneth committed the offense of receiving stolen property. We also conclude that, although Kenneth forfeited his right to challenge on appeal the two conditions of his probation by failing to object to them in the juvenile court, his claims fail on the merits, and thus his trial counsel did not render ineffective assistance by failing to object to them at the disposition hearing. However, we further conclude the case must be remanded for a determination of whether Kenneth's count 2 offense of receiving stolen property was a felony or a misdemeanor as required by section 702.

FACTUAL BACKGROUND

A. *The People's Case*

On August 22, 2013, at around 9:30 or 10:00 p.m., 17-year-old Stephanie D. was heading home alone on the San Diego trolley when she saw in the trolley car a group of about 15 male and female "kids," some of whom she recognized. She testified she had gotten into a physical altercation with one of the girls in the group when she (Stephanie) got to the trolley, so she walked to the opposite end of the trolley car. She had boarded

3

the trolley at the Spring Street station and was going to get off at the Massachusetts Avenue station.

Stephanie D. testified that, as she was standing in the trolley car, a couple of the kids had come over to her to say "hi," and then walked back to the group. Soon thereafter, another Stephanie─Stephanie C.─approached Stephanie D. and said she wanted to fight with her. When Stephanie D. asked why, Stephanie C. shrugged her shoulders and walked back to her group.

When the trolley reached the Lemon Grove station, which is one stop before the Massachusetts Avenue station, Stephanie D. saw an open seat and started to move toward it. She testified that when the trolley stopped there, the group of kids saw her move and some of them got off the trolley, apparently thinking she was about to get off the trolley, but when she sat down they got back on.

Stephanie D. testified that when she got off the trolley at the Massachusetts Avenue station, all the kids in the group also got off. As she was walking toward her home, about three girls got in front of her, told her they wanted to fight her, and prevented her from walking away. The boys in the group told Stephanie D. that she might as well "get it over with." Davis noticed that some of the kids had their cameras out.

Stephanie D. testified she started walking away and told the kids to stop following her. After crossing the street, about eight or nine people circled her. One of the girls, A.D., announced she wanted to fight Stephanie D. Stephanie asked A.D. why she would want to fight when A.D. did not even know her. A few of the boys in the group were

4

filming Stephanie D. with their cell phone cameras and yelling, "World Star." Stephanie D. testified that World Star is a Web site like YouTube that allows one to view videos of fights.

Stephanie D. told A.D. she did not want to fight and started walking away. A.D. replied, "If you don't fight, you might as well tie up your hair because I'm going to pull all your hair out." A.D. then attacked Stephanie D., pulling her hair and punching her in the face. Stephanie D. fell to the ground and A.D. got on top of her and continued hitting her. Stephanie D. then felt a lot of people rushing in and grabbing her satchel bag. She then saw the kids running back to the trolley station, laughing.

Stephanie D. testified she saw a short, skinny male with a ponytail—whom she identified at the hearing as Kenneth—running away with her satchel bag (which she also referred to as her purse). She stated she heard B.H., who was across the street at the trolley station, yelling, "Why did you guys take her stuff, you guys didn't need to do that, give her her stuff back, give her her stuff back." She also heard someone shout, "TRD," which stands for "Team Run Dat," a party crew. "Run dat" is slang for fighting.

Stephanie D. further testified that as she was walking toward her house, L., one of the males in the group, ran up and returned her purse to her. Later she found that her Compass card, a pocket knife, and some makeup were missing. Her foster mother called the police.

Stephanie D. also testified that she identified Kenneth later that night, at a curbside lineup at the Massachusetts Avenue trolley station, as the male with the ponytail whom she had seen running away with her purse. She stated she was able to see Kenneth

clearly because bright light from a police car was shining on him and the other people in the lineup. She told the police officer who had driven her back to the trolley station that she was 89 percent sure of her identification of Kenneth. She testified that when she was looking at the 15 people in the lineup, she was not just looking for anybody who had a ponytail. Although she had never met Kenneth before the attack, she had seen him previously at the trolley stop. She testified that because she had seen him before and already knew what he looked like, she knew it was him when she saw him running away with her bag.

B.H. testified for the prosecution under a grant of use immunity. She explained that on the night of the incident, she was on the trolley with a group of her friends. At some point, B.H. noticed Stephanie D. was on the trolley with them. B.H. testified that only one person in her group originally intended to get off at Massachusetts Avenue. However, they all got off there to watch a fight. The person who wanted to fight Stephanie D. was A.D.

B.H. testified that she saw Stephanie D. walking away saying she needed to go home, A.D. running after her, and Stephanie D. on the ground with A.D. on top of her. Everyone else was in a circle around them. B.H. testified that Kenneth initially was on the trolley by himself. However, he was one of the people who got off at Massachusetts Avenue and followed Stephanie D. He was also one of the people who surrounded Stephanie D. during the attack.

Deputy Christopher Allen of the San Diego County Sheriff's Department testified that he drove Stephanie D. back to the Massachusetts Avenue trolley station where a

6

group of juveniles who might have been involved in the incident had been detained. At a well-lit curbside lineup of those juveniles, Stephanie D.—who was in Deputy Allen's car—pointed out Kenneth, who had a ponytail, and said she was 89 percent sure he was the person whom she saw running away with her purse.

Deputy Allen testified that he arrested Kenneth. After Kenneth waived his *Miranda*[1] rights, he told Deputy Allen that he normally got off the trolley at the Lemon Grove stop, which is before the Massachusetts Avenue stop. However, he claimed that he missed the Lemon Grove trolley stop that day and had to get off at Massachusetts Avenue so he could catch the trolley back to Lemon Grove. He also claimed that he stayed on the trolley platform, he did not have anything to do with the fight, he was not with the group that was involved in the fight, and he did not know anything about a purse being taken.

B. *Defense Case*

The defense presented no witnesses.

DISCUSSION

I. *SUFFICIENCY OF THE EVIDENCE*

Kenneth first contends that insufficient evidence supports the juvenile court's finding that he committed the offense of receiving stolen property. We reject this contention.

---

[1]    *Miranda v. Arizona* (1966) 384 U.S. 436.

7

A. *Standard of review*

When assessing a challenge to the sufficiency of the evidence supporting a conviction, we apply the substantial evidence standard of review, under which we view the evidence "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Thus, "[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment." (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.)

"If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the [trier of fact's] verdict may lie in the evidence he ignores." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)

8

B. *Analysis*

As this court explained in *In re Anthony J.* (2004) 117 Cal.App.4th 718, 728, to sustain a conviction for receiving stolen property (Pen. Code, § 496, subd. (a)), the prosecution "must prove (1) the property was stolen; (2) the defendant knew it was stolen, and (3) the defendant had possession of it." "The requisite possession of the stolen property . . . need not be exclusive." (*Ibid*.) "However, mere presence near the stolen property in and of itself is insufficient evidence of possession to sustain a conviction for receiving stolen property." (*Ibid*.)

Thus, to prove the delinquency petition allegation that Kenneth committed the offense of receiving stolen property, the People had to establish beyond a reasonable doubt: (1) Stephanie D.'s satchel bag was stolen; (2) Kenneth knew that bag was stolen; and (3) he possessed the bag at some point after it was stolen. (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1425.)

Here, Kenneth challenges only the sufficiency of the evidence establishing the third element; that is, he only challenges the sufficiency of the evidence supporting the court's implied finding that he possessed Stephanie D.'s bag after it was stolen from her.

Viewing the evidence in the light most favorable to the judgment, as we must (*People v. Johnson, supra*, 26 Cal.3d at p. 578), we conclude substantial evidence—particularly Stephanie D.'s eyewitness identification testimony, B.H.'s eyewitness testimony that Kenneth was present during the attack, and the consciousness-of-guilt evidence showing Kenneth lied to the police about his whereabouts during the

9

attack─strongly and sufficiently supports the court's finding that Kenneth possessed Stephanie D.'s bag after it was stolen from her.

First, Stephanie D. provided strong identification testimony. Specifically, she testified that, after she fell to the ground and felt her attackers grabbing her satchel bag, she saw a short, skinny male with a ponytail running away with her bag. At trial she identified Kenneth as the male whom she had seen running away with her bag.

Stephanie D. also testified that, at the curbside lineup at the Massachusetts Avenue trolley station after the attack, she identified Kenneth as the male with the ponytail whom she had seen running away with her purse. She testified that she was able to see Kenneth clearly because bright light from a police car was shining on him and the other people in the lineup, and that she told the police officer who had driven her back to the trolley station (Deputy Allen) that she was 89 percent sure of her identification of Kenneth. Kenneth disregards Stephanie D.'s explanation on cross-examination that she did not tell Deputy Allen she was 100 percent sure of her identification only because she was on the ground and she "couldn't see who *initially* snatched [her satchel bag]." (Italics added.) She then reiterated, however, that she "saw him [(Kenneth)] running with [her] bag."

Kenneth also disregards Stephanie D.'s testimony that when she was looking at the 15 people in the lineup, she was not just looking for anybody who had a ponytail. She testified that, although she had never met Kenneth before the attack, she had seen him previously at the trolley stop. She further testified that because she had seen him before and already knew what he looked like, she knew it was him when she saw him running away with her bag.

10

Stephanie D.'s strong eyewitness identification of Kenneth as the male she saw running away with her satchel bag is sufficient by itself to sustain the juvenile court's finding that Kenneth knowingly possessed her bag after it was stolen from her during the attack.  As already discussed, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses.  (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206; *People v. Jones*, *supra*, 51 Cal.3d at p. 314.)  Furthermore, the uncorroborated testimony of a single witness is sufficient to sustain a conviction or true finding "unless the testimony is physically impossible or inherently improbable."  (*People v. Scott* (1978) 21 Cal.3d 284, 296.)  Here, the identification testimony provided by Stephanie D. is neither physically impossible nor inherently improbable, and thus constitutes sufficient substantial evidence of Kenneth's post-theft possession of the bag.  Kenneth's suggestion that there was another male with a ponytail at the scene of the attack who could have been the person Stephanie D. saw running away with her bag is unavailing.

Also, "when the circumstances surrounding the identification and its weight are explored at length at trial, [and] eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court."  (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497.)  Here, as the circumstances surrounding Stephanie D.'s identification of Kenneth and the weight to be given to her testimony were explored at length at the trial, the juvenile court's determination that her identification of Kenneth should be believed is binding on this court.  (*Ibid*.)

Furthermore, by failing to present all the relevant evidence on this issue, and failing to present that evidence in the light most favorable to the People, Kenneth has not

11

carried his burden of showing the evidence of his post-theft possession of Stephanie D.'s satchel bag was insufficient. (*People v. Sanghera*, *supra*, 139 Cal.App.4th at p. 1574.)

Additional substantial evidence supports the court's finding that Kenneth possessed Stephanie D.'s satchel bag after it was stolen from her during the attack. "The inference of consciousness of guilt from willful falsehood or fabrication or suppression of evidence is one supported by common sense." (*People v. Holloway* (2004) 33 Cal.4th 96, 142.)

Here, the prosecution presented substantial evidence that circumstantially supports the reasonable inference drawn by the juvenile court that Kenneth demonstrated consciousness of guilt by lying to Deputy Allen about his whereabouts at the time of the attack. Specifically, Deputy Allen testified that, after Kenneth waived his *Miranda* rights, he told Deputy Allen that he stayed on the Massachusetts Avenue trolley platform, he was not with the group that was involved in the fight, and he did not know anything about a purse being taken. However, B.H. testified under a grant of immunity that she saw Kenneth at the scene of the attack. As already discussed, Stephanie D. testified she saw Kenneth running away with her bag. Crediting the testimony of both Stephanie D. and B.H., and finding there was circumstantial evidence of Kenneth's guilt, the court stated:

> "The circumstantial evidence we have, [Stephanie D.] says there's
> this group of kids and Kenneth is definitely part of it. You have
> [B.H. who] corroborates that and says there's this group of kids,
> Kenneth is definitely part of it. He is not next to me. He is five or
> six feet away, and then you have Kenneth saying I don't know what
> any of you people are talking about, I wasn't at the scene, I was at
> the trolley platform, I missed my stop, I'm waiting for the next

12

trolley to come. What is that circumstantial evidence of? Well, that's circumstantial evidence of consciousness of guilt. [¶] . . . [¶] So we have direct evidence putting him there and circumstantial evidence putting him there. Is it a tie in my eyes that goes to [Kenneth], no. . . . It is unreasonable to think that Kenneth wasn't at the scene, given that now two separate people put him there and there's an identification made."

For all of the foregoing reasons, we conclude that substantial evidence supports the court's finding that Kenneth possessed Stephanie D.'s bag after it was stolen from her. Accordingly, we affirm the court's finding that Kenneth committed the crime of receiving stolen property as charged in count 2 of the petition.

## II. *THE COURT'S FAILURE TO EXPLICITLY DECLARE WHETHER KENNETH'S COUNT 2 OFFENSE WAS A MISDEMEANOR OR A FELONY*

Kenneth next contends the juvenile court erred in failing to declare on the record whether his count 2 offense of receiving stolen property was a felony or a misdemeanor, as required by section 702 and *Manzy W.*, *supra*, 14 Cal.4th 1199, and thus this case must be remanded to the juvenile court for such a determination. The Attorney General agrees this case should be remanded.

Section 702 provides in part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, *the court shall declare the offense to be a misdemeanor or felony*." (Italics added.)

The California Supreme Court has explained that "[this] requirement is obligatory: '[S]ection 702 means what it says and mandates the juvenile court to declare the offense a felony or misdemeanor.'" (*Manzy W.*, *supra*, 14 Cal.4th at p. 1204, quoting *In re Kenneth*

13

*H*. (1983) 33 Cal.3d 616, 619 (*Kenneth H.*).)  *Manzy W.* reiterated that section 702 unambiguously requires "an *explicit* declaration by the juvenile court whether an offense would be a felony or misdemeanor in the case of an adult." (*Manzy W.*, at p. 1204, italics added.)

In addition, rule 5.780(e)(5) of the California Rules of Court provides:

"(e)  If the court determines . . . by proof beyond a reasonable doubt in a section 602 matter, that the allegations of the petition are true, the court must make findings on each of the following, noted in the order:  [¶] . . . [¶] In a section 602 matter, the degree of the offense and whether it would be a misdemeanor or a felony had the offense been committed by an adult.  If any offense may be found to be either a felony or a misdemeanor, *the court must* consider which description applies and *expressly declare on the record that it has made such consideration, and must state its determination as to whether the offense is a misdemeanor or a felony*.  These determinations may be deferred until the disposition hearing." (Italics added.)

That a section 602 petition sustained by the juvenile court describes a charged offense as a felony does not by itself indicate compliance with the court's statutory obligation under section 702 to explicitly declare whether the offense is a felony or misdemeanor.  (*Kenneth H.*, *supra*, 33 Cal.3d at pp. 619-620; *In re Ricky H.* (1981) 30 Cal.3d 176, 191 ["The mere specification in the petition of an alternative felony/misdemeanor offense as a felony has been held insufficient to show that the court made the decision and finding required by section 702."].)  Likewise, juvenile court minutes containing a notation that the court found the minor committed a charged felony offense does not establish compliance with the court's statutory obligation under section

14

702 to explicitly declare whether the offense is a felony or misdemeanor if the transcript of the hearing does not support the notation.  (*Ricky H.*, *supra*, 30 Cal.3d at p. 191.)

Here, at the adjudication hearing held on September 19, 2013, the juvenile court found true the count 2 petition allegation that Kenneth received stolen property in violation of Penal Code section 496, subdivision (a).  As the parties acknowledge, this offense, had it been committed by an adult, would have been punishable as either a felony or a misdemeanor.  (*Ibid*.)  Thus, the juvenile court was required under section 702 to explicitly declare on the record whether the offense was a misdemeanor or a felony.  However, as the record shows and the parties acknowledge, it failed to make such an explicit declaration at any of the hearings.  Accordingly, this case must be remanded to the juvenile court with directions to make an explicit declaration on the record whether Kenneth's offense of receiving stolen property in violation of Penal Code section 496, subdivision (a) is a misdemeanor or a felony as required by section 702.

### III.  *CONDITIONS OF PROBATION*

Kenneth challenges for the first time two conditions of probation requiring that he (1) obtain his probation officer's permission before he travels out of the county and (2) be home every day between 6:00 p.m. and 6:00 a.m. (subject to specified exceptions discussed, *post*).  He claims these conditions are "unconstitutionally overbroad and restrain his liberty under federal and state law."  He also claims that, if this court determines he waived his right to challenge these conditions of his probation by failing to object to them in the juvenile court, his counsel's failure to object constituted prejudicial ineffective assistance of counsel.  We conclude that, although Kenneth forfeited his right

15

to challenge on appeal the two conditions of his probation by failing to object to them in the juvenile court, his claims would fail on the merits and, thus, his trial counsel did not render ineffective assistance by failing to object to those conditions at the disposition hearing.

A. *Background*

At the disposition hearing held on October 3, 2013, the juvenile court declared Kenneth a ward of the court and ordered that he be placed on probation subject to a variety of conditions, including the two conditions he challenges in this appeal, which provide: (1) "The minor shall not leave the County of San Diego without permission of the Probation Officer"; and (2) "The minor shall be at [his] legal residence between the hours of 6:00 PM and 6:00 AM unless in the company of [his] parent, legal guardian, or other adult person having legal care and custody of the minor, subject to modification at the Probation Officer's discretion. [¶] *The minor has an exception to curfew for verifiable school or employment, religious activities, organized sports or court-ordered programs*." (Italics added.)

The record shows, and the parties acknowledge, that Kenneth, through his trial counsel, did not object to these or any of the other conditions of his probation. In fact, Kenneth's counsel told the court, "My client has indicated he will comply with those conditions."

B. *General Legal Principles*

"The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents." (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941 (*Antonio R.*).) When a

16

juvenile court adjudges a minor a ward of the court under section 602 and places the ward under the supervision of a probation officer, "[t]he court may impose and require any and all reasonable [probation] conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).)

"The juvenile court has wide discretion to select appropriate [probation] conditions . . . ." (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 (Sheena K.).) The permissible scope of the juvenile court's discretion in formulating the terms of a minor's probation is greater than that allowed for adult probationers "because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.'" (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910; *Antonio R.*, *supra*, 78 Cal.App.4th at p. 941.) Thus, a probation condition "'that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.'" (*Sheena K.*, *supra*, at p. 889.)

Generally, a probation condition will be upheld unless it "'(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'" (*People v. Lent* (1975) 15 Cal.3d 481, 486, abrogated by Proposition 8 on another ground as explained in *People v. Wheeler* (1992) 4 Cal.4th 284, 290-292.)

17

Furthermore, the juvenile court must not order conditions that are unconstitutionally overbroad.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  A probation condition is unconstitutionally overbroad if it imposes limitations on the probationer's constitutional rights and it is not closely or narrowly tailored and reasonably related to the compelling state interest in reformation and rehabilitation.  (*Ibid.*; *In re Victor L., supra,* 182 Cal.App.4th at p. 910.)  "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights─bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement."  (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

In an appropriate case, a probation condition that is not "'sufficiently narrowly drawn'" may be modified and affirmed as modified.  (*People v. Lopez* (1998) 66 Cal.App.4th 615, 629; see also *In re E.O.*, *supra*, 188 Cal.App.4th at p. 1158.)

1.  *Standard of review*

Generally, "[t]he juvenile court's exercise of discretion in establishing conditions of probation in juvenile cases 'will not be disturbed in the absence of manifest abuse.'" (*In re Christopher M.* (2005) 127 Cal.App.4th 684, 692; *In re Josh W.* (1997) 55 Cal.App.4th 1, 5.)  However, a facial challenge to a term of probation on the ground of unconstitutional overbreadth or vagueness that is capable of correction without reference to the particular sentencing record developed in the trial court presents a pure question of law, and we review such challenges de novo.  (*Sheena K.*, *supra,* 40 Cal.4th at p. 887; *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

18

C. *Analysis*

1. *Forfeiture*

The Attorney General argues that Kenneth forfeited his claim that the two conditions of probation he challenges on appeal are unconstitutionally overbroad because he did not raise this claim in the juvenile court. We agree.

Challenges to probation conditions ordinarily must be raised in the trial court or appellate review of those conditions will be deemed forfeited. (*People v. Welch* (1993) 5 Cal.4th 228, 234-235 [extending the forfeiture rule to a claim that probation conditions are unreasonable, when the probationer fails to object on that ground in the trial court].) The rule foreclosing appellate review helps discourage the imposition of invalid probation conditions and reduce the number of costly appeals. (*Id*. at p. 235.)

The forfeiture rule applies to appellate claims that involve discretionary sentencing choices or allegedly unreasonable probation conditions, because "characteristically the trial court is in a considerably better position than the Court of Appeal to review and modify a sentence option or probation condition that is premised upon the facts and circumstances of the individual case." (*Sheena K., supra,* 40 Cal.4th at p. 885.)

However, as the California Supreme Court explained in *Sheena K.*, the forfeiture rule does *not* apply to a challenge on appeal to a probation condition on the ground of unconstitutional overbreadth or vagueness when the challenge is a "facial" challenge in that its resolution does "not require scrutiny of individual facts and circumstances" (*Sheena K., supra,* 40 Cal.4th at p. 885), and the challenge thus presents a "pure question of law" because the alleged "facial constitutional defect[]" in the probation condition is

19

"capable of correction without reference to the particular sentencing record developed in the trial court."  (*Id.* at p. 887.)

The corollary to this *Sheena K.* facial challenge nonforfeiture rule (hereafter referred to as the *Sheena K.* corollary) is that the forfeiture rule *does* apply to a challenge on appeal to a probation condition on the ground of unconstitutional overbreadth or vagueness when resolution of the challenge "require[s] scrutiny of individual facts and circumstances" (*Sheena K., supra,* 40 Cal.4th at p. 885), and the challenge therefore does *not* present a "pure question of law" because the alleged constitutional defect in the challenged condition is *not* "capable of correction without reference to the particular sentencing record developed in the trial court."  (*Id.* at p. 887.)

Here, Kenneth's challenges to the two conditions of his probation at issue here on the ground they are unconstitutionally overbroad do not qualify as facial challenges, and thus they are forfeited under the *Sheena K.* corollary, because (1) he claims the conditions are unrelated to his present case and are not adequately tailored to the purposes of his probation, (2) his challenges are thus premised upon the "individual facts and circumstances" (*Sheena K., supra,* 40 Cal.4th at p. 885) of his case and the alleged constitutional defects in the challenged conditions are not "capable of correction without reference to the particular sentencing record developed in the trial court" (*id.* at p. 887), and (3) his counsel did not raise these challenges in the juvenile court.

Specifically, Kenneth claims the first challenged condition of his probation, which requires him to obtain his probation officer's permission before he travels out of the county, is unconstitutionally overbroad and should be "modified to allow him to leave the

county with permission of either the probation department *or his mother*" (italics added) because "[his] crime did not occur out-of-county; travel in and of itself is not criminal; he has no known gang ties; leaving the county bears no relation to the crime of which he was convicted"; and [t]here is no rehabilitative purpose to be achieve by restricting his ability to travel because [he] did not commit a crime out of county."  This challenge cannot be deemed a facial challenge because its resolution requires scrutiny of individual facts and circumstances in this case.  Thus, under the *Sheena K.* corollary, Kenneth forfeited the right to challenge on appeal this condition of probation on the ground of unconstitutional overbreadth by failing to challenge the condition on this ground in the juvenile court.

Kenneth also claims the curfew condition, which requires that he be at home every day between 6:00 p.m. and 6:00 a.m., is unconstitutionally overbroad because (among other things) "there is no nexus between the behavior to be deterred and the excessively early curfew that justifies such infringement on [his] right to travel and associate"; "there is no allegation [he] is in a gang"; and "[k]eeping [him] inside his home from 6:00 p.m. is not necessary to curb gang behavior because such negative activity is not demonstrated in [his] social history."  This challenge also cannot be deemed a facial challenge because its resolution similarly requires scrutiny of individual facts and circumstances in this case.  Thus, under the *Sheena K.* corollary, Kenneth also forfeited the right to challenge on appeal this condition of probation on the ground of unconstitutional overbreadth by failing to challenge the condition on this ground in the juvenile court.

## 2. *Kenneth's related claim of ineffective assistance of counsel*

Last, we reject Kenneth's related claim that his trial counsel rendered ineffective assistance by failing to object at the disposition hearing to the two conditions of probation Kenneth challenges in this appeal. To prevail on a claim of ineffective assistance of counsel, a defendant must establish that the defendant bears the burden to show that: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms (*Strickland v. Washington* (1984) 466 U.S. 668, 688); and (2) counsel's deficient performance was prejudicial; i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*Id.* at p. 694; *People v. Jones* (2010) 186 Cal.App.4th 216, 235.) We conclude that, although Kenneth forfeited his right to challenge the two conditions of his probation on appeal, his claim that the conditions are unconstitutionally overbroad would fail on the merits and, thus, his trial counsel did not render ineffective assistance by failing to object to those conditions at the disposition hearing.

### a. *Curfew condition*

In support of his claim that the probation condition imposing a daily curfew that starts at 6:00 p.m. and ends at 6:00 a.m. is unconstitutionally overbroad and should be modified to start at 10:00 p.m., Kenneth relies on section 729.2, subdivision (c), which provides in part:

> "If a minor is found to be a person described in Section . . . 602 and the court does not remove the minor from the physical custody of the parent or guardian, the court as a condition of probation, except in any case in which the court makes a finding and states on the record its reasons that that condition would be inappropriate, shall:

22

[¶] . . . [¶] (c) Require the minor to be at his . . . legal residence between the hours of *10:00 p.m.* and 6:00 a.m. unless the minor is accompanied by his or her parent or parents . . . ."  (Italics added.)

However, section 729.2 "serve[s] as a floor, not a ceiling, for juvenile probation conditions."  (*In re Walter P.* (2009) 170 Cal.App.4th 95, 99-100.)  Thus, a curfew condition more restrictive than that set forth as a beginning guideline in section 729.2, subdivision (c) may be imposed in the exercise of the juvenile court's discretion to serve the court's statutory purpose—set forth in section 730, subdivision (b)—of enhancing the reformation and rehabilitation of the ward (here, Kenneth).  (See *In re Jason J.* (1991) 233 Cal.App.3d 710, 719 [affirming a probation condition requiring curfew from "dark" to 6:00 a.m.], disapproved on other grounds in *People v. Welch, supra,* 5 Cal.4th at p. 237; *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1499, 1502 (*Laylah K.*) [affirming a probation condition imposing a curfew from 8:00 p.m. to 5:00 a.m.], disapproved on other grounds in *In re Sade C.* (1996) 13 Ca1.4th 952, 962, fn. 2.)

*Laylah K.* is instructive.  In that case an 8:00 p.m. curfew condition was upheld against a constitutional challenge where it was tailored to provide the minor and her sister with structure and discipline, which was lacking in their home environment, and to prevent future criminal behavior.  (*Laylah K.*, *supra*, 229 Cal.App.3d at pp. 1499, 1502.)

Here, the record shows the curfew condition imposed on Kenneth was appropriately tailored to meet his need for parental supervision, to provide him with structure and discipline in his home environment, and to help prevent his return to criminal activity.  Parental supervision was lacking.  According to the probation officer's social study, which the court read and considered, Kenneth had had no contact with his

23

father in seven years and believed his father was in prison. He had a troubled relationship with his mother, who had her own criminal record. (CT 109, 110, 115.) Kenneth's history includes truancy, use of illegal drugs (marijuana) and alcohol, fighting at school and with his mother, and a failing academic record.

The travel restriction imposed by the challenged condition of Kenneth's probation is properly tailored to assist the court in monitoring his whereabouts and conduct, given the lack of parental supervision at home by his mother (discussed, *ante*) and Kenneth's prior and current criminal activity.

Kenneth's reliance on *Antonio R.* is unavailing. In that case the Court of Appeal upheld a similar out-of-country travel restriction, noting it "[had] confidence that any reasonable request to travel [outside the county] will be honored . . . by [the ward's] probation officer, and this safety valve saves the condition." (*Antonio R.*, *supra*, 78 Cal.App.4th at p. 942.)

Kenneth's reliance on *In re Daniel R*. (2006) 144 Cal.App.4th 1 is also unavailing. In that case, the juvenile court imposed a probation condition prohibiting the minor from traveling to Mexico. (*Id*. at p. 4.) On appeal, he argued that the condition was unconstitutionally overbroad and should be modified to permit such travel with the permission of his probation officer, provided he traveled with his parents. (*Id.* at pp. 5-6.) The Court of Appeal observed that travel to Mexico was not related to any of the minor's theft crimes, and there was no evidence before the juvenile court to show that he had ever committed a crime in Mexico, had any gang ties to Mexico, or had engaged in any questionable conduct in that country. (*Id*. at p. 7.) Nevertheless, the *Daniel R*. court

24

concluded that the travel restriction condition with modifications the minor requested (such as recounting to the probation officer what occurred during his visits to Mexico) was reasonable and provided "a safety valve similar to that in *Antonio R.*, *supra*, 78 Cal.App.4th 937, which save[d] it from constitutional infirmity." (*In re Daniel R.*, *supra*, 144 Cal.App.4th at p. 8.)

As Kenneth has not shown and cannot establish that the travel restriction condition of his probation is unconstitutionally overbroad, he also has not demonstrated and cannot show that his counsel provided unconstitutionally ineffective assistance by failing to object to that condition.

## DISPOSITION

The case is remanded to the juvenile court for a determination of whether Kenneth's count 2 offense of receiving stolen property was a felony or a misdemeanor as required by Welfare and Institutions Code section 702.  In all other respects, we affirm the juvenile court's judgment.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.